[L. A. No. 19511 (S. F. No. 17199). In Bank. Dec. 26, 1946.]

Guardianship of the Person and Estate of WILLIAM RONALD LEACH, a Minor. WILLIAM RONALD LEACH, a Minor etc., Appellant, v. E. MAE McCALLOM, Respondent.

Wood, Crump, Rogers & Arndt, Guy Richards Crump and Stanley M. Arndt for Appellant.

Samuel L. Kurland, George R. Maury and Alfred C. Ackerson for Respondent.

SHENK, J.—This is a motion to dismiss the appeal in case numbered L. A. 19511. The lower court made an order allowing respondent, E. Mae McCallom, as special guardian of the person and estate of William Ronald Leach, a minor, certain amounts as attorney's fees, expenses and costs. Notices of appeal were filed on behalf of the minor by his sister, Patricia Lee Leach, and by Guy R. Crump, as guardian *ad litem*, and respondent then made this motion to dismiss on the ground that notice of appeal was not filed in time. It was further contended that the order was nonappealable.

This matter is one of several proceedings relating to the guardianship of the minor and his sister, Patricia Lee Leach. The underlying controversy involved in this appeal is a dispute over the amount awarded as attorney's fees, but it will be helpful to an understanding of the nature of the order, and the problem presented, to set forth some of the background of the proceeding.

William Ronald Leach, the minor, and his half-sister Patricia, also a minor, owned an estate consisting of the capital stock of Leach Relay Company having an approximate value of $600,000. F. Paul Hornaday, testamentary nominee, was appointed general guardian of their persons and estates in September, 1942. On April 13, 1944, respondent McCallom, maternal grandmother of the minors, filed a petition praying that she be appointed guardian *ad litem* of William for the purpose of protecting his interests against a proposed sale by Hornaday, the general guardian, of the minor's stock to a corporation in which it was alleged Hornaday had or was to have a controlling interest. (The respondent grandmother also filed a similar petition on behalf of the other minor, Patricia.)

As prayed for in her petition, respondent was appointed guardian *ad litem* of William, and on the following day (April 14, 1944) she filed written objections to Hornaday's petition for instructions concerning the proposed sale of stock, alleging adverse interest on the part of Hornaday and that an unconscionable fraud would be perpetrated on William if such

sale were consummated. Two weeks later (April 27, 1944), respondent filed a supplemental petition requesting permission to institute a proceeding to remove Hornaday as general guardian for failure to file an inventory or accounting and for alleged waste. Respondent was authorized to institute such a proceeding, and on the same day (April 27, 1944) she filed a petition for removal of Hornaday as general guardian and for her appointment as successor guardian, alleging various grounds of fraud, waste and mismanagement. She also filed a supplemental petition alleging waste and mismanagement. (Similar petitions were filed in Patricia's estate.)

On November 14, 1944, the court (Honorable Joseph W. Vickers) dismissed Hornaday's petition for the sale of stock and granted respondent's petition for removal of Hornaday as guardian of William. (He was also removed as guardian of Patricia.) Hornaday appealed from this order and also from a formal judgment filed on December 27, 1944.

On January 23, 1945, respondent filed, in the proceeding involving William's estate, a petition for the allowance of attorney's fees and expenses in the sum of $47,795.25, based on the performance of services in connection with the removal of Hornaday as guardian and the opposition to his petition for the sale of stock. (A similar petition was filed in the estate of Patricia.)

Thereafter, on February 28, 1945, Patricia filed a petition requesting the appointment of her attorney, Baldwin Robertson, as guardian *ad litem* of William for the purpose of opposing respondent's petition for the allowance of attorney's fees and expenses. Mr. Robertson was accordingly appointed on the same day. When the matter of allowance of fees came on for hearing before Judge Vickers, it appeared that there was pending in the same department a similar petition for the allowance of a like sum for services rendered by respondent's attorneys in procuring the removal of Hornaday as guardian for the sister Patricia. Judge Vickers concluded that the interests of the two minors were conflicting, and Mr. Robertson having resigned as guardian *ad litem* for William, Norman A. Bailie was appointed guardian *ad litem* in his place to attend all hearings on the fee application and to "prosecute an appeal from any adverse order or judgment thereon. . . ."

Following hearings on respondent's petition for allowance of counsel fees and expenses, at which Mr. Bailie represented

William, Judge Vickers made an order on April 2, 1945, allowing $28,500 as attorney's fees and $376 as costs out of the estate of William. This order, which included within it an award of fees and settlement of account in the other guardianship (of Patricia, No. 216044), was entered in the minutes on April 16, 1945, and reads as follows:

"Having been heretofore submitted, the following is ordered: In the matter of the Petition of E. Mae McCallom, special guardian, for attorney fees and expenses. In Case 208,101 attorney fees, $27,500.00, Expenses: $376.00. In Case 216,044, Attorney fees $32,500.00, Expenses: $508.51.

"On the supplemental petition of E. Mae McCallom, special guardian, for attorney fees; Case 208,101: Attorney fees $1,000.00, Case 216,044, Attorney fees $1,000.00.

"The first and final account of E. Mae McCallom special guardian, Case 216,044 is approved and allowed and attorney fees fixed at $32,500.00."

Thereafter, on May 4, 1945, counsel for respondent, upon the informal request of Mr. Bailie, as guardian *ad litem* of William, presented, and the judge signed and filed, a written order which covered the same subject matter (allowance of fees and costs) as the minute order, and which contained some findings and a provision for a lien.

On May 11, 1945, Mr. Bailie filed a petition for instructions "relative to appeal." At the hearing thereon, held May 28, 1945, he stated that the allowance of fees was too large, but testified that in his opinion an appeal would not be in the best interests of the ward's estate. The court (Honorable Newcomb Condee) thereupon ordered that no appeal be taken. On June 13, 1945, Patricia, William's sister, by her attorney, Mr. Robertson, petitioned for the appointment of a successor guardian *ad litem* to Mr. Bailie. This petition was denied on June 19, 1945, and the court refused to permit Mr. Bailie to resign.

On June 26, 1945, Patricia filed a notice of appeal from the written order of May 4, 1945, for and on behalf of her brother William. Thereafter, on July 2, 1945, and on petition therefor this court appointed Mr. Crump as guardian *ad litem* to prosecute this appeal. On the same day (July 2, 1945), Mr. Crump filed a second notice of appeal on behalf of William from the said written order of May 4, 1945, and affirmed and approved the previous notice filed by Patricia on June 26.

So far as William's estate is concerned, the order appealed from herein related solely to the allowance of attorney's fees and costs. Neither the minute order entered April 16 nor the subsequent written order of May 4 contained any reference to the settlement of an account in his estate, and, so far as the record shows, no accounting was had in his estate.

Three questions have been argued and presented on the motion to dismiss: (1) Is an order awarding attorney's fees in a guardianship proceeding appealable? (2) If so, was the oral pronouncement of the court, entered in the minutes, such a final order? (3) If so, did the time to file notice of appeal run from the entry in the minutes, or from the filing of the subsequent written order?

We have concluded that the first question must be answered in the negative, and since that is so, it becomes unnecessary to answer the other two.

■ Appealable orders in probate proceedings generally are listed in the Probate Code, section 1240, and include an order allowing an attorney's fee. Appealable orders in guardianship proceedings are separately covered by Probate Code, section 1630, and do not include such an order. Section 1630 repeats some of the orders listed in section 1240, and this has been taken as an indication of a legislative intention to make the guardianship section independent of the general probate section. In accordance with this view, several cases have held that section 1630 is exclusive in the field of guardianship, and that section 1240 cannot be invoked to make appealable, in guardianship proceedings, an order not listed in section 1630. (See *Guardianship of Reser*, 57 Cal.App.2d 935, 936 [135 P.2d 709] ; *Guardianship of Morro*, 36 Cal.App.2d 623, 627 [98 P.2d 552].) (For similar holdings that Code Civ. Proc. § 963, subd. 3 [predecessor of Prob. Code §§ 1240, 1630], was exclusive, see *Estate of Mailhebuau*, 201 Cal. 664, 666 [258 P. 378] ; *Estate of Wittmeier*, 118 Cal. 255 [50 P. 393] ; *Estate of Walkerly*, 94 Cal. 352 [29 P. 719].)

Section 1630 of the Probate Code provides for an appeal from an order ''settling an account of a guardian.'' It may be assumed that that language includes an annual, current or intermediate account, as well as a final account. (See *Estate of Grant*, 131 Cal. 426, 429 [63 P. 731].) It may also be assumed that if a minor elects to pursue his objections to an account and to the order of settlement by taking an appeal,

and his interests adverse to his general guardian have been adequately protected as by the appointment of a guardian *ad litem*, the disposition of the appeal will be binding upon him. (Cf. *Estate of Di Carlo*, 3 Cal.2d 225 [44 P.2d 562, 99 A.L.R. 990]; *Estate of Vucinich*, 3 Cal.2d 235 [44 P.2d 567]; *Estate of Eaton*, 38 Cal.App.2d 180 [100 P.2d 813].) But it does not follow that either order in this case is appealable. In stating what orders were appealable in guardianship matters, the Legislature undoubtedly contemplated that the allowance of attorney's fees be included in a guardian's account. It would necessarily follow that the question of the proper allowance of attorney's fees may be determined upon the settlement in the trial court of an account of the guardian and be reviewed on appeal from the order of settlement.

We conclude that the orders involved herein purporting merely to fix and allow attorney's fees in a guardianship matter, are nonappealable. It therefore becomes immaterial whether the oral pronouncement of the court was the final order, or whether the time for taking an appeal commenced to run from the minute order of April 2, 1945, or from the written order of May 4th. Neither was an order settling an account in the estate of William Ronald Leach.

The appeal is dismissed.

Gibson, C. J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J., and SCHAUER, J.—We concur in the conclusion reached in the majority opinion. As we understand said opinion it holds that neither the minute order nor the formal written order allowing attorneys' fees in this case is appealable, and therefore the attempted appeal therefrom must be dismissed. It does not purport to pass upon the validity of the order allowing attorneys' fees or give approval to any form of procedure in the trial court for the determination of the amount of attorneys' fees allowable in guardianship proceedings except on the settlement of an account of the guardian, and specifically holds that an order settling such an account, current or final, is appealable. With this understanding of the holding in the majority opinion, we are in full accord with it.